FILED
03 MAY -6 PM 12:56

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DIANA PEARSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-02-S-3207-S |
| ) | |
| JERRY UNDERWOOD, Deputy ) | |
| Sheriff, in his official and individual ) | |
| capacity as Deputy Sheriff of Jefferson ) | |
| County; MIKE HALE, Sheriff of ) | |
| Jefferson County, ) | |
| ) | |
| Defendants. ) | |

ENTERED
MAY 06 2003

## MEMORANDUM OPINION

Plaintiff Diana Pearson asserts a claim against defendant Mike Hale, the Sheriff of Jefferson County, Alabama,[1] based upon 42 U.S.C. § 1983, as well as a state law claim for conversion. Both claims arise from the alleged destruction of personal property by defendant Deputy Sheriff Jerry Underwood during eviction of plaintiff from the apartment she had occupied.[2] The action is before the court on the motion to dismiss filed by Sheriff Hale.[3] He contends that plaintiff has failed to state a claim upon which relief can be granted, and that he is entitled to immunity.

### I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain only a "'short and

---

[1] The original defendant was Jim Woodward, then the Sheriff of Jefferson County, Alabama. Mike Hale succeeded Woodward as Sheriff on January 21, 2003, and is substituted automatically for Sheriff Woodward in this action. See Fed. R. Civ. P. 25(d)(1).

[2] Doc. no. 1 (Complaint). This court granted in part and denied in part the motion filed by Deputy Sheriff Underwood to dismiss claims against him. Specifically, the court concluded that Deputy Sheriff Underwood was entitled to immunity in his official capacity with respect to the claim asserted by plaintiff based upon 42 U.S.C. § 1983, and that he was entitled to immunity in his official and individual capacities with respect to plaintiff's state law claim for conversion. Accordingly, only plaintiff's claim based upon 42 U.S.C. § 1983 against Deputy Sheriff Underwood in his individual capacity remains. See doc. nos. 11 & 12.

[3] Doc. no. 15.



plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).[4] Consequently, a complaint should not be dismissed for failing to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46, 78 S. Ct. at 102.[5] Even so, pleadings must be "something more than an ingenious academic exercise in the conceivable." *Marsh v. Butler County*, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc). Although notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the Eleventh Circuit has explained that the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware*

---

[4] Federal Rule of Civil Procedure 8(a)(2) provides: "A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *See also Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997), stating:

> The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief. It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. . . .

*Id.* at 1368-69 (citation omitted); *see also Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

[5] *See also, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984) (holding that a complaint should be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations" of the plaintiff's complaint); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) (quoting *Conley*, 355 U.S. at 45-46, 78 S. Ct. at 102); *Magluta v. Samples*, 256 F.3d 1282, 1282 (11th Cir. 2001) (same); *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) ("A complaint may not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief."); *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.) ("[T]he 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)), *reh'g denied*, 840 F.2d 25, *cert. denied*, 486 U.S. 1055, 108 S. Ct. 2822, 100 L. Ed. 2d 923 (1988); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (same).

2

*Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citation omitted).

Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Such motions accordingly are "viewed with disfavor and rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969), and *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)). Even so,

> the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for
>
>> [i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

*Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13, at 8-118 (2d ed. 1984)).

This low bar has been raised, however, with respect to claims based upon 42 U.S.C. § 1983. *See, e.g., GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998).

> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing [his, her, or] its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out [his, her, or] its claim. Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.

*Id.* at 1367 (citations omitted).

## II. DISCUSSION

**A.    Section 1983 Claim**

Plaintiff does not allege that the Sheriff of Jefferson County personally participated in the destruction of her property.[6] Instead, plaintiff complains that the Sheriff failed to train Deputy Sheriff Underwood, and that he had "a policy in place in which the deputies are authorized to smash the personal property of the citizens of the state of Alabama under writ of seizure or to allow the personal property to be destroyed by having no policy in place to safeguard the property."[7] As such, the Sheriff is sued only in his official capacity.

The Eleventh Amendment shields not only the State of Alabama itself from federal court actions, but also state officials sued in an "official capacity." That is because an action for money damages against a state official in his or her official capacity[8] is tantamount to a suit against the state itself and, absent waiver or consent, the Eleventh Amendment bar remains intact. *See McMillian v. Monroe County*, 520 U.S. 781, 785 n.2, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997); *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

---

[6] Because of the change of administration, the term "Sheriff" shall apply both to former Sheriff Woodward, who held office during the time the events complained of occurred, and to the present office-holder, Mike Hale.

[7] Doc. no. 1 (Complaint) ¶ 2, at 1-2.

[8] When determining the capacity in which a governmental employee is sued, the court looks "at the complaint and the course of proceedings." *Colvin v. McDougall*, 62 F.3d 1316, 1317 (11th Cir. 1995).

4

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989); *see also Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) ("[T]he Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest.") (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L. Ed. 2d 67 (1984)); *Lassiter v. Alabama A&M University*, 3 F.3d 1482, 1485 (11th Cir. 1993) ("Where the defendant is an entity other than the state, the suit may nonetheless be barred where the state is the 'real party in interest.'").

> For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit.

*Summit Medical Associates*, 180 F.3d at 1336. The Supreme Court recently summarized this point in *McMillian v. Monroe County*, 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997), saying that

> a suit against a governmental officer "in his official capacity" is the same as a suit "'against [the] entity of which [the] officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n.55, 98 S. Ct. 2018, 2035-2036, n.55, 56 L. Ed. 2d 611 (1978)), and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents," *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 878, 83 L. Ed. 2d 878 (1985).

*McMillian*, 520 U.S. at 785 n.2, 117 S. Ct. at 1737 n.2; *see also Lassiter*, 3 F.3d at 1485 ("Official capacity actions are deemed to be against the entity of which the officer is an agent.").[9]

---

[9] Note, however, that official capacity actions for prospective injunctive relief are *not* treated as actions against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 3106 n.14, 87 L. Ed. 2d 114 (1985); *Ex parte Young*, 209 U.S. 123, 156, 28 S. Ct. 441, 452, 52 L. Ed. 714 (1908). "The Eleventh Amendment does not insulate official capacity defendants from actions seeking prospective injunctive relief." *Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1485 (11th Cir. 1993) (citing *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989), and Parker v. Williams, 862 F.2d 1471, 1475 (11th Cir. 1989)). *See also Will v. Michigan Department of State Police*, 491 U.S. 58, 71 n.10, 109 S. Ct. 2304, 2312 n.10, 105 L. Ed. 2d 45 (1989), holding that "a state official in his or her official capacity, when

It now is well established that Alabama sheriffs are deemed to be "arms of the State" when engaged either in law enforcement activities, or in the administration of a county jail and, thus, are entitled to Eleventh Amendment (sovereign) immunity when sued in an official capacity for money damages under § 1983. *McMillian v. Monroe County*, 520 U.S. 781, 793, 117 S. Ct. 1734, 1740, 138 L. Ed. 2d 1 (1997) ("Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties.") (affirming *McMillian v. Johnson*, 88 F.3d 1573, 1583 (11th Cir. 1996)). *See also* Ala. Const. of 1901, Art. V, § 112;[10] *Parker v. Amerson*, 519 So. 2d 442, 442-43 (Ala. 1987) (holding that sheriffs are state officers, and that tort claims brought against sheriffs based on their official acts constitute suits against the State of Alabama, not the counties from which they are elected).

The Eleventh Circuit discussed "official capacity" claims in the context of *municipal* officials in *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991), but the court's discussion is equally applicable to state or county governmental officials.

> In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply "'another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. at 165, 105 S. Ct. at 3105 (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 2035 n. 55, 56 L. Ed. 2d 611 (1978)). Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents. *See id.* 473 U.S. at 165-66, 105 S. Ct. at 3105; *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 877-78, 83 L. Ed. 2d 878 (1985); *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036; *Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir.1990). Consequently, a plaintiff cannot rely on a *respondeat superior* theory to hold a municipality liable for individual actions of its officers. *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036; *Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th

---

sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"

[10] Article V, § 112, Alabama Constitution (1901), provides: "The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, *and a sheriff for each county*." (Emphasis supplied.)

> Cir.1982). "[A] municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036 (emphasis in original). Instead, in order to recover against a municipality, a plaintiff must establish that the alleged racial discrimination or harassment occurred pursuant to a custom or policy of the municipality. *Id.* at 694, 98 S. Ct. at 2037; *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1503 (11th Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S. Ct. 1970, 90 L. Ed. 2d 654 (1986); Hearn, 688 F.2d at 1334.

*Busby*, 931 F.2d at 776 (footnotes omitted).

Plaintiff has alleged that the Sheriff should be held liable for Deputy Sheriff Underwood's actions due to his failure to properly train his deputies, and because the Sheriff had in place a policy that permitted destruction of personal property. In order to state a claim against the Sheriff for failure to train Deputy Sheriff Underwood, plaintiff must allege that the Sheriff was aware of a need to train Deputy Sheriff Underwood with respect to the execution of a writ of seizure and eviction. *See Marsh v. Butler County*, 268 F.3d 1014, 1037 (11th Cir. 2001) ("Unless a policymaker knows of the need to train an officer in a particular subject area, no liability can arise from failure to train him.") (citing *Gold v. City of Miami,* 151 F.3d 1346, 1351 (11th Cir. 1998)).

Similarly, plaintiff has failed to allege facts which, if proven, would establish that the Sheriff had a policy or custom of permitting the destruction or failing to safeguard the personal property of a citizen upon whom a writ of seizure and eviction has been served. The complaint contains no allegations of a past pattern of such incidents and, thus, fails to state a claim against the Sheriff. *See Marsh*, 268 F.3d at 1037.

**B.    State Law Claim**

The Sheriff also contends that he is immune from suit for money damages with respect to plaintiff's state law claim for conversion. The Alabama Supreme Court held in *Parker v. Amerson*, 519 So. 2d 442, 443-45 (Ala. 1987), that sheriffs are state officers, and that tort claims brought

against sheriffs based on their official acts constitute suits against the State of Alabama, not the counties from which they are elected.

> [T]he Alabama Supreme Court has interpreted these provisions [from the state constitutions of 1875 and 1901] and their historical background as evidence of "the framers' intent to insure that sheriffs be considered executive officers of the state." *Parker*, 519 So. 2d, at 444. Based primarily on this understanding of the State Constitution, the court has held unequivocally that sheriffs are state officers, and that tort claims brought against sheriffs based on their official acts therefore constitute suits against the State, not suits against the sheriff's county. *Id.*, at 443-445.[5] Thus, Alabama counties are not liable under a theory of respondeat superior for a sheriff's official acts that are tortious. *Id.*, at 442.

*McMillian*, 520 U.S. at 789, 117 S. Ct. at 1738-39 (footnote omitted). In the omitted footnote, the Court also observed:

> As a result of [its] holding [in *Parker*] and the State Constitution's sovereign immunity provision, *see* Ala. Const. of 1901, Art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity"), the Alabama Supreme Court [subsequently] has held [in three other cases] that a sheriff is absolutely immune from all suits for damages based on his official acts. *Parker v. Amerson*, 519 So. 2d 442, 446 (Ala. 1987). *See also King v. Colbert County*, 620 So. 2d 623, 626 (Ala. 1993); *Boshell v. Walker County Sheriff*, 598 So. 2d 843, 844 (Ala. 1992); *Hereford v. Jefferson County*, 586 So.2d 209, 210 (Ala. 1991).

*Id.* at 789 n.5, 117 S. Ct. at 1739 n.5.

In *Alexander v. Hatfield*, 652 So. 2d 1142 (Ala. 1994), the Alabama Supreme Court explained:

> Under Article I, § 14, of the Alabama Constitution of 1901, the only exceptions to the sovereign immunity of sheriffs are action brought
>
>> "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute."

*Id.* at 1143 (quoting *Parker*, 519 So. 2d at 443). None of those exceptions is at issue here. Accordingly, the Sheriff is absolutely immune for his official acts with respect to plaintiff's state law claim for conversion. Moreover, the Sheriff also is immune in his individual capacity. *See McMillian*, 101 F.3d at 1365 ("[U]nder Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity.").

### III. CONCLUSION

For all of the foregoing reasons, the motion to dismiss filed by the Sheriff is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 6th day of May, 2003.

_____
United States District Judge

9